IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:19-CR-11-FL-1

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| DAVID CARR, ) | |
| Defendant. ) | |

The court memorializes here the reasons why it overruled at jury selection defendant's objection to the government's peremptory strikes during jury selection pursuant to Batson v. Kentucky, 476 U.S. 79 (1986).

**BACKGROUND**

Defendant, a black male, was charged with forcible assault on a federal official with a deadly or dangerous weapon, robbery of personal property belonging to the United States, and knowingly brandishing a firearm during and in relation to a crime of violence. Trial of defendant's case commenced January 6, 2020, and concluded January 8, 2020 with guilty verdict. The issue herein addressed arose the morning of January 6th, when after administrative conference, the court proceeded with jury selection utilizing the struck method.[1]

The court called 28 randomly selected members of the jury venire into the well for voir dire. Of those called, five prospective jurors were black. The rest were white. After prospective

---

[1] Procedures adhered to are described in the attached instructional sheet, distributed to the parties before any criminal trial before the undersigned.

jurors answered the court's questions, informed by the parties' requests, and addressed any motions for cause, the court tasked the parties with exercising their peremptory strikes. The government mistakenly exercised five peremptory strikes on the first pass.

The issue was brought to the court's attention at sidebar and after consultation with the sides, the court determined the five strikes would stand and the government would be allowed to exercise its sixth and final strike on the second pass. Defendant objected that the government's use of peremptory strikes violated Batson. Three of the government's first five peremptory strikes were used to remove black prospective jurors: G.M., T.T., and C.W.[2] Defendant argued that the government's use of peremptory strikes constitutes a pattern of strikes against a racial group, that the government struck each of the jurors because of their race, and that the facts and other relevant circumstances raise an inference that the prosecutor used peremptory strikes to exclude jurors because of their race.

At sidebar, the court, assuming without deciding that defendant made a prima facie case under Batson, asked the government to provide its reasons explaining why it struck each black prospective juror. The government explained that it struck the T.T. because of her body language, that she seemed disinterested and might not consistently follow along, she is not married, and that she has no children. The government represented it struck G.M. because he is a pastor and it was concerned that he would be able to sit and judge fairly. Finally, the government explained that it struck C.W. because of her age and her background as an engineer.

---

[2] The court uses each juror's initials to identify them.

Defendant responded that the government's reasons as to each prospective juror were pretextual, leaving the only possible conclusion to be that G.M., T.T., and C.W. were struck because of race.

## DISCUSSION

"[T]he Equal Protection Clause prohibits a prosecutor from using the State's peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of their race." Powers v. Ohio, 499 U.S. 400, 409, 111 S. Ct. 1364, 1370, 113 L. Ed. 2d 411 (1991). To make a prima facie showing of purposeful race discrimination, defendant must show 1) he is a member of a cognizable racial group, 2) that the prosecutor exercise peremptory strikes to remove venire members based on race. Batson v. Kentucky, 476 U.S. 79, 96 (1986), holding modified by Powers, 499 U.S. 400.

In proving the second prong, defendant may rely on facts and circumstances, including the number of racial group members in the venire, the nature of the crime, the race of the defendant and victim, a pattern of strikes against members of a particular race, and the prosecution's questions and statements during voir dire. See Flowers v. Mississippi, 139 S. Ct. 2228, 2244–51 (2019) (finding a Batson violation where, after six trials, approximately 41 of 42 peremptory strikes used by the government struck black prospective jurors, and five of six peremptories in the instant trial struck black prospective jurors). "While the racial composition of the actual petit jury is not dispositive of a Batson challenge, neither [is] the district court precluded from considering it." United States v. Grandison, 885 F.2d 143, 147–48 (4th Cir. 1989) (finding no pattern of racially discriminatory strikes where six of the government's nine peremptory strikes were used to strike black prospective jurors, but two black jurors ultimately served on the jury).

3

If defendant makes the prima facie case, "the burden shifts to the State to come forward with a neutral explanation for challenging black jurors." Id. at 97. "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." Purkett v. Elem, 514 U.S. 765, 768 (1995).

Once the government offers a race neutral explanation, "the trial court must then decide whether the opponent of the strike has proved purposeful racial discrimination." Id. at 767; Batson, 476 U.S. at 98. "There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge." Hernandez v. New York, 500 U.S. 352, 365 (1991). "If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack [panelist] who is permitted to serve, that is evidence tending to prove purposeful discrimination." Miller–El v. Dretke, 545 U.S. 231, 241 (2005). In addition, "shifting explanations, [] misrepresentations of the record, and [] persistent focus on race in the prosecution's file" can sustain an inference of purposeful discrimination. Foster v. Chatman, 136 S. Ct. 1737, 1754 (2016).

The court's first task "is initially to determine whether the defendant has shown a prima facie violation when the issue is first raised." United States v. Joe, 928 F.2d 99, 103 (4th Cir. 1991). If the court concludes that defendant may be able to make a prima facie case, "it should require the government to articulate reasons for exercising its peremptory challenges to remove members of the defendant's racial group." Id. Finally, if the reasons offered are facially neutral, "the court should provide the defendant with the opportunity to establish pretext and then issue a specific ruling on each juror in question supported by its findings of fact and its rationale for the ruling." Id.

At the outset, the court notes that defendant has failed to articulate a prima facie case under Batson. Defendant's Batson challenge rests upon the assertion that the government engaged in a pattern of striking black jurors. The record does not bear this out. Five of the 28 members of the venire were black. The government used three of its first five peremptory strikes to remove black prospective jurors, and the remainder of the peremptory strikes were used to remove prospective jurors that were not black. Two black prospective jurors were ultimately empaneled, even though the government could have struck those jurors as well. None of the government's statements, questions, or comments to the court are probative of discriminatory intent. Finally, after the court overruled defendant's objection, the government did not use any peremptory strikes to remove black prospective jurors or alternates. Thus, defendant fails to show a prima facie case of racial discrimination under Batson.

Even assuming in the alternative that defendant could make a prima facie case of racial discrimination, the government offered facially neutral explanations for why it struck each prospective juror. The government explained that it struck the T.T. because of her body language, that she seemed disinterested and might not consistently follow along, she is not married, and that she has no children. The government represented it struck the G.M. because he was a pastor and it was concerned that he would be able to sit and judge fairly. Finally, the government struck C.W. because of her age and because of her age and her background as an engineer. Each of these are facially neutral reasons.

Defendant offers no basis for the court to infer that the government's reasons for striking T.T. were pretextual. Counsel's observation that T.T.'s body language indicated she might be disinterested and not follow the proceedings carefully is consistent with the court's recollection of

T.T.'s behavior, notwithstanding defense counsel's argument that T.T. did not answer many questions. Defendant also does not offer any meaningful challenge to the government's assertion that T.T.'s family background was the reason she was struck. Therefore, defendant fails to show purposeful racial discrimination as to T.T..

As to G.M., defendant's arguments regarding pretext are equally unavailing. The government's concern regarding G.M.'s occupation as a pastor were the reason for its use of a peremptory strike. The issue doubtless was at the forefront of the government's mind, where the government pointed out that one prospective juror had earlier been dismissed for cause in part due to her professed religious beliefs. Therefore, the court is finds that G.M.'s occupation, not his race, was the reason he was excused.

C.W. presents a closer question. Defendant points out that another prospective juror who was an engineer was not struck by the government, even though the government claims that C.W. was struck because of her age and her occupation as an engineer. Moreover, the government appeared to suggest at sidebar that it was concerned about C.W.'s occupation because of how she might receive forensic evidence, even though in opening statement the government indicated it would not present any forensic evidence.

Nonetheless, the court finds the government's decision was not purposeful discrimination. Defendant did not rebut the government's proffered reason to strike C.W. based on her age. The engineer that was not struck by the government was an electrical engineer while C.W. was a pharmaceutical engineer. Counsel for the government's demeanor at sidebar convinces the court that the reasons given by the government were credible. Moreover, as discussed more fully above, the government's comments during voir dire and overall use of peremptory strikes cuts against an

6

inference of purposeful discrimination in striking any of the prospective jurors, where the government only used three out of its first five peremptory strikes to strike to remove black prospective jurors, and two black jurors ultimately ended up being empaneled without objection from the government. Further undermining an inference of pretext is that, after the court overruled defendant's objection and the jury was selected, the government did not use its peremptory strikes to remove black alternate jurors, ultimately empaneling an alternate juror who was black.

## CONCLUSION

For the reasons stated herein, the court OVERRULED defendant's objection to the government's peremptory challenges pursuant to Batson v. Kentucky, 476 U.S. 79 (1986).

SO ORDERED this the 15th day of January, 2020.

_____
LOUISE W. FLANAGAN
United States District Judge